477 So.2d 1323 (1985)
LEADER NATIONAL INSURANCE COMPANY
v.
Terry LINDSEY and Kim Coker.
Nos. 54756, 55095.
Supreme Court of Mississippi.
July 24, 1985.
*1324 C. Denton Gibbes, Eugene M. Harlow, Gibbes, Graves, Mullins, Bullock & Ferris, Laurel, for appellant.
Thomas Tucker Buchanan, Billie J. Graham, Buchanan & Graham, Laurel, for appellees.
En Banc.
PRATHER, Justice, for the Court:
This appeal addresses the question of which party has the burden of pleading and proving a matter in avoidance of liability in a garnishment suit. Stated differently, the question is whether the judgment creditor in an automobile negligence suit may prevail in a garnishment action against the judgment debtor's automobile liability carrier without affirmatively pleading and proving compliance with the conditions precedent to recovery under the policy.
Terry Lindsey and Kim Coker hold final judgments against Frank C. Yarbrough, defendant, secured in a prior tort suit. In the consolidated case before us, Lindsey and Coker seek to collect these judgments against Yarbrough's liability insurance carrier, Leader National Insurance company, garnishee, who denied coverage for lack of notice to it of the filing of suit against their insured Yarbrough. From the rendering of judgment against it, Leader National appeals, and Lindsey and Coker cross-appeal.
Leader National's assignments of error are summarized as:
(1) The trial court's refusal of a directed verdict and peremptory instruction for appellee's failure to affirmatively plead and prove compliance with the notice provisions of the policy of the insured, Yarbrough;
(2) The jury verdict was not supported by the credible evidence and the law; and
(3) The trial court's granting appellee's instructions No. 5 and No. 9.
Appellees Lindsey and Coker cross-appeal assigning as error:
(1) The trial court erred in failing to grant a peremptory instruction in favor of the appellees due to the failure of appellant Leader National to affirmatively plead non-compliance with the notice provisions contained in the policy of the insured;
(2) The trial court erred in granting appellant's motion for a new trial and entering judgment for appellee Coker in the amount of $10,000 rather than $20,000.

I.
On December 4, 1981, appellees Terry Lindsey and Kim Coker were involved in an automobile collision with Frank C. Yarbrough. At the time of the accident, Yarbrough was covered by a basic automobile liability and physical damage insurance policy issued by the appellant, Leader National Insurance Company. On June 28, 1982 appellees Lindsey and Coker recovered judgments by default against the insured Yarbrough in the amounts of $10,000 and $20,000 respectively plus costs.
Upon nonpayment of the default judgment, appellees Lindsey and Coker filed suggestions for garnishment against Leader National. The allegations of the appellees' pleadings followed strictly the averments of Miss. Code Ann. § 11-35-1 (1972) in its statutory language without an assertion that the insured had complied with the condition precedent to suit of giving notice to the garnishee insurance company before the former negligence suit against Yarbrough was filed.
Leader National filed its answer to the writ of garnishment denying indebtedness, using also the general statutory language. No affirmative defenses were set forth in the answer.
Appellees filed a contest of the answer asserting that the appellant's answer was incorrect because of information regarding *1325 Yarbrough's policy of insurance. Responding to a request for admissions, Leader National admitted Frank Yarbrough to be its insured on the vehicle and date of the accident in question.
After a pretrial conference was held on October 28, 1982 and the case was set for trial, the garnishee insurance company filed on November 4, 1982, a motion for leave to amend and asserted the affirmative defense of lack of notice to it by its insured Yarbrough of the filing of the former negligence suit. Finding the motion to be untimely, the trial court denied the motion to amend, and the case proceeded to trial.

II.
At trial, the plaintiffs/appellees direct case consisted of general exhibits (1) the policy of insurance issued to Yarbrough by Leader National, (2) default judgments obtained by Lindsey and Coker, and (3) admissions of the garnishee that Yarbrough was its insured on the date and vehicle involved in this accident. Both plaintiffs/appellees testified of receiving a letter from Leader National's insurance adjuster after their suit was filed which they took to their own attorney. Their attorney advised them not to have any dealings with the insurance company or the defendant Yarbrough.
At the conclusion of plaintiffs/appellees suit, Leader National moved for a directed verdict for plaintiffs' failure to plead and prove as a part of their prima facie case compliance with the notice conditions of the policy. The insurance contended that, not only notice of the claim, but also notice of the filing of suit was a condition precedent to recovery under the policy.
The trial court overruled the motion for a directed verdict, and in so doing, held that the burden of pleading and proving an affirmative defense was upon the defendant garnishee/appellant Leader National Insurance Company. The court had previously denied the garnishee's affirmative defense amendment request, but nevertheless, proceeded to permit the insurance company to introduce proof of its sought amendment. Therefore, the insurance company received the benefit of the amendment, and the jury heard the insurance company's proof in avoidance of its liability under the policy, and also was instructed as to the law on this theory of the insurance company's defense. In effect, therefore the amendment was allowed.
This proof showed unequivocally that the insurance company was noticed of the pending claim of Lindsey and Coker at least by April 7, 1982. The proof was disputed as to the notice of the filing of suit as opposed to the notice of the claim.
The trial court ordered a remittitur of $10,000.00 on Coker's judgment in view of the limitation of liability in the policy of $20,000.00 per accident. Coker was a passenger in Lindsey's vehicle.

III.
The case brings into focus the question of whether pleading in strict compliance with the garnishment statute, Miss. Code Ann. § 11-35-1 et seq., is sufficient, or whether the Mississippi Rules of Civil Procedure, Rule 8(c), Affirmative Defenses, requires supplemental pleading to the statutory requirement to give notice of affirmative defenses.
The question of applicability of the Mississippi Rules of Civil Procedure to an action for garnishment was settled in First Mississippi National Bank v. KLH Industries Inc., 457 So.2d 1333 (Miss. 1984) which held:
[T]he procedural rules whereby a party seeks to enforce, or resist the enforcement of, the remedy of garnishment is that provided by our garnishment statutes, Miss. Code Ann. §§ 11-35-1 to -61 (1972) supplemented only by so much of the Mississippi Rules of Civil Procedure as may be found not inconsistent with those statutes.
457 So.2d at 1338. Universal Computer Services, Inc. v. Lyall, 464 So.2d 69 (Miss. 1985) (as to applicability of rules to attachment statutes).
*1326 General requirements of pleading of the garnishee in a garnishment action are set forth by statute.
Miss. Code Ann. § 11-35-25 provides as follows:
Every person duly summoned as a garnishee shall answer on oath as to the following particulars, viz:
First.  Whether he be indebted to the defendant or were [sic] so indebted at the time of the service of the writ on him, or have [sic] at any time since been so indebted; and, if so indebted, in what sum, whether due or not, and when due or to become due, and how the debt is evidenced, and what interest it bears.
Second.  What effects of the defendant he has or had at the time of the service of the writ on him, or has had since, in his possession or under his control.
Third.  Whether he knows or believes that any other person is indebted to the defendant; and, if so, whom, and in what amount, and where he resides.
Fourth.  Whether he knows or believes that any other person has effects of the defendant in his possession or under his control; and, if so, whom, and where he resides.
Miss. Code Ann. § 11-35-45 provides as follows:
If the plaintiff believe [sic] that the answer of the garnishee is untrue, or that it is not a full discovery as to the debt due by the garnishee, or as to the property in his possession belonging to the defendant, he shall, at the term when the answer is filed, unless the court grant further time, contest the same, in writing, specifying in what particular he believes the answer to be incorrect. Thereupon, the court shall try the issue at once, unless cause be shown for a continuance, as to the truth of the answer, and shall render judgment upon the facts found, when in plaintiff's favor, as if they had been admitted by the answer, but if the answer be found correct, the garnishee shall have judgment for costs against the plaintiff.
In the case sub judice, Leader National as garnishee filed its answer to the writ of garnishment in accordance with the statute, denying generally all allegations of the plaintiffs/appellees complaint, and affirmatively raising the nonjoinder of Yarbrough as a necessary party. No avoidance by way of lack of notice of filing of suit by its insured was raised.
At trial, the garnishee relied upon the policy of insurance between Leader National and the insured judgment debtor, which contains the following provisions regarding notice of accident and suit:
4. Insured's Duties in the Event of Occurrence, Claim or Suit
(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.
* * * * * *
5. Action Against Company
No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
On appeal, Leader National relies upon Mississippi Rules of Civil Procedure 9(c) which provides as follows:
(c) Conditions Precedent. In pleading the performance or occurrence of conditions *1327 precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.
Leader National's position is that the plaintiff/appellees should have alleged and proved that the condition precedent, notice of suit, was given by the insured. It is noted, however, that Leader National attempted by untimely amendment to affirmatively plead lack of notice, a position contrary to their argument here.
On the other hand, the plaintiff/appellees rely upon Rule 8(a) providing:
(a) Claims for Relief. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain
(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and
(2) a demand for judgment for the relief to which he deems himself entitled. Relief in the alternative or of several different types may be demanded.
Stanton and Associates v. Bryant Construction Company, 464 So.2d 499 (Miss. 1985) has interpreted the limited role of pleading under our new rules to be of a simple, concise, and direct manner. MRCP 8(e). Citing Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Bryant held that a claim should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support his claim which would entitle him to relief".
What must be pled by a judgment condition in his initial pleading  the suggestion for garnishment  is set forth by statute. Miss. Code Ann. §§ 11-35-1 et seq. The method of pleading prescribed is simple and consistent with what is required in Rule 8(a), MRCP. By analogy, the construction we have given Rule 8(a) in Bryant obtains when the legal sufficiency of a suggestion for garnishment is tested.
On the other hand, the requirement that conditions precedent be pled found in MRCP 9(c) is foreign to our statutory garnishment procedures. As such it may not be enforced in a garnishment action. First Mississippi Natural Bank v. KLH Industries, Inc., 457 So.2d 1333, 1338 (Miss. 1984).
This Court holds that the appellees here alleged that appellant had an insurance policy with the judgment debtor in full force and effect at the time of the auto accident, and this allegation is sufficient in substance to allege fulfillment of all conditions precedent to recovery under the policy. The trial court's ruling in respect to the motion for directed verdict was proper.

IV.
The appellant raises the issue of sufficiency of proof of notice of suit. This testimony was conflicting. However, the proof that supported notice to the insurance company by Yarbrough was as follows: (1) The secretary of the local insurance agent testified that Yarbrough came to her office on April 7, 1982 and told her that "[h]e thought he was being sued." (2) In response to that conversation with Yarbrough, the secretary telephoned a Judy Owens with Leader National and advised her of the conversation. (3) On the same date a confirmation letter was written by the secretary to Judy Owens with Leader National, notifying the insurance carrier of the "claim". (4) The secretary testified that she related to a Mr. Jack Oliver, a company representative, that Yarbrough said that he was being sued. Later, in quoting from her prior deposition, the secretary read that Mr. Oliver "did not talk to me directly, but he stated the fact that they had in their files where  it says  I had put them on notice."
In opposition to this proof, however, Mr. Oliver denied any notice of a lawsuit, although admitting notice of the claim. After receiving notice of the claim on April 7, 1982, Oliver secured an insurance adjuster on April 16, 1982 to investigate the claim. On April 29, 1982, the adjuster reported in *1328 writing to Mr. Oliver that he could not locate Coker and Lindsey at the addresses given him. In part his letter states "No listing was found for the claimant. Per our telephone discussion with Mrs. Owens, she advised U.S.F. & G. was subrogating... ."
On May 13, 1982, Mr. Oliver wrote the adjuster and told him to close his file if he had not located the claimants. Testimony of Randolph Ramsey, Jr., claims investigator, established that Leader National had actual knowledge on May 3, 1982, some one month before default judgment was obtained, that the appellees were claiming injuries as a result of the accident with the insured.
Proof in the case sub judice was sufficient to show actual knowledge on the part of Leader National and its agents of both the accident and the existence of a lawsuit sufficient to enable the insurance company to take the necessary steps to protect itself from legal liability. Monarch Ins. Co. of Ohio v. Cook, 336 So.2d 738 (Miss. 1976). Although disputed evidence was presented, the issue was for the jury as factfinder to resolve. Mills v. Nichols, 467 So.2d 924 (Miss. 1985); Barkley v. Miller Transporters, Inc., 450 So.2d 416 (Miss. 1984).
This record does not answer the question of whether the attorney for Lindsey/Coker contacted the insurance adjuster after his clients received letters from him. The record only shows that he advised his client not to contact the adjuster. This Court does not address the attorney's responsibility under these circumstances to act in good faith with the opposing party or the insurer.
Under the facts of this case, actual knowledge of the filing of suit under disputed facts was present, and the jury was the factfinder which resolved that issue in favor of Lindsey and Coker. This Court finds no error in this assignment.

V.
Appellant's last assignment addresses two instructions granted by the trial court. No authority was presented in support of this assignment, and the issue therefore need not be addressed. Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979). Nonetheless, this Court has examined the challenged instructions and find no impropriety or error in the instructions, and therefore, no merit to this assignment.
Finding no reversible error, this Court affirms the trial court on direct appeal.

VI.

CROSS-APPEAL
Lindsey and Coker, cross-appellants, assert two errors on cross-appeal. Only one of the assignments needs addressing.
Did the trial court err in granting the appellant's motion for a new trial and, upon trial, entering judgment for appellee Kim Coker in the amount of $10,000.00?
Under the terms of the insurance policy, appellant's liability was expressly limited to $20,000.00 per accident. The trial court accordingly granted appellant's motion for a new trial unless appellee Kim Coker agreed to accept a remittitur of $10,000.00 from the jury verdict of $20,000.00. This ruling was proper as it is well settled that, absent bad faith, the liability of an insuror is limited by the terms of the contract. See e.g. Old Sec. Cas. Ins. Co. v. Clemmer, 455 So.2d 781 (Miss. 1984).
This assignment is without merit.
DIRECT APPEAL AFFIRMED, CROSS-APPEAL AFFIRMED.
PATTERSON, C.J., and DAN M. LEE, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, J., dissent.
HAWKINS, Justice, dissenting:
I respectfully dissent.
No jury issue was ever presented on the liability of Leader National in this case.
*1329 The furtive conduct of the plaintiffs' counsel is glossed over, if not ignored by the majority. The plain prejudice to Leader National shown by Yarbrough's failure either to forward to the company his summons to court, or clearly notify the company that two suits had been filed against him in Scott County is likewise ignored.
The circuit judge should first have sustained the motion for a directed verdict; second, granted the peremptory instruction requested by Leader National; or finally, entered a judgment n.o.v. We should reverse and render.

FACTS
On December 4, 1981, Frank C. Yarbrough, a resident of Scott County, carried an automobile liability insurance policy with Leader National Insurance Company, issued through Robert L. Lyle, doing business as "Lyle Insurance and Real Estate," in Morton. On that date Yarbrough was involved in a motor vehicle accident with Terry Lindsey and Kim Coker.
Yarbrough did not report the accident to his insurance agent. On February 23, 1982, Mrs. Sylvia Fairchild, secretary to the Lyle insurance agency, received a telephone call from a U.S. Fidelity & Guaranty claim office notifying her that this company was a subrogee for a motor vehicle accident occurring on December 4, 1981, involving Yarbrough.
Mrs. Fairchild promptly wrote Yarbrough to come by their office "so we can report this claim to the company. This is very important."
On April 7, 1982, Yarbrough went to the Lyle insurance agency office and reported the claim. He delivered a police report, and the only further information he gave Lyle was that he was involved in an accident in December and that he was in to report it. He said nothing to Lyle about being sued.
Lyle told Yarbrough that if he was being sued, or if he had any papers from an insurance company or individual, or attorney, or anyone, to make him aware of it, that this was very important and it should be done immediately. Yarbrough promised Lyle he would.
Mrs. Fairchild also interviewed Yarbrough while at the office that day. He furnished her no notice or summons. He did make the statement to her that he "thought he was being sued."
On that day Mrs. Fairchild telephoned Judy Owens with Leader National, which she followed with the following memorandum:
As per my conversation with you today concerning the above insured and his accident of 12-3-81, we are enclosing our letter to insured dated 2-23-82, an accident report and police report. As I explained to you, USF & G called me on 2-23-82 and informed me of the accident and that day I wrote Frank Yarbrough a letter, which is enclosed. On March 2, 1982 USF & G called me back for Mr. Yarbrough's address and I gave this to them. We never heard anything from this, until today, the insured came by to report the claim. All the information that he had is the police report, which is enclosed. He did not have any other information as he had lost it.
The claims department of Leader National received the April 7 memo with the accident report and police report on April 12. Leader National promptly assigned the claim to Crawford & Co. (Crawford), a firm of insurance adjusters, at its Laurel office. Crawford received the assignment April 16.
On April 29 Randolph E. (Randy) Ramsey, Jr., sent a handwritten memo to Leader National. He reported that he had attempted to locate Robert Lindsey without success. He tried first to telephone him, but the phone had been disconnected, and there was no phone listing. He then contacted the U.S. Fidelity & Guaranty office, which gave him another telephone number, which he tried, but it was the wrong number. The U.S. Fidelity & Guaranty office told him Lindsey had a passenger, a Kim Coker, at the same address as Lindsey. He had been unable to locate either of them.
*1330 Ramsey also stated he had written both Lindsey and Coker at the address given, but had received no response. He concluded, saying he would locate the address given and see what he could find.
On May 13 Ramsey wrote Leader National a typed report. He first noted there had been no response whatever from the correspondence to the claimant operator and passenger.
Ramsey then reported that on May 11 he had gone to the post office in Laurel to get the direction to Box 118, Route 9. At the address Ramsey found only an abandoned mobile home site. He talked with some neighbors, who confirmed some "Lindseys" had at one time lived there, but probably had moved around the first of the year, and they could give no idea as to how to locate them or get in touch with them.
Having reached what he concluded to be a dead end, Ramsey suggested that Leader National contact the U.S. Fidelity & Guaranty Company, pay the claim with a joint draft in the name of USF & G and Lindsey. He hoped this would bring the "Lindseys" to light.
Upon receipt of this letter from Crawford, Leader National instructed Crawford to close their file. It was the view of the claims manager that if these parties' injuries "were of a severe nature we would have heard about it by now."
As he noted in his letter to Leader National, Ramsey had in fact written Lindsey and Coker two separate communications on April 21, 1982, which each had received.
Following the accident on December 4, 1981, Lindsey and Coker employed an attorney in Laurel. On their behalf he filed two suits in the circuit court of Scott County on March 2, 1982. Process was had on Yarbrough March 9 in one suit and March 10 in the other.
The attorney made no attempt to contact Yarbrough or his carrier.
When Lindsey and Coker received the April 21 notices from Crawford, they carried them to their attorney the same day. Each notice stated that Crawford represented the insurance carrier of Frank Yarbrough and had been unable to reach the recipient by phone. It requested each to call Ramsey at his earliest convenience concerning the accident with the insured near Richland, Mississippi, on December 4, 1981.
When these notices were given by Lindsey and Coker to their attorney, he told them not to have any contact with the defendant or his insurance company.
Pursuant to a motion, the circuit clerk made a docket entry of default in one case on May 19, and in the other on May 24.
On June 28 the circuit judge entered default judgments against Yarbrough in the amount of $20,000 in the suit by Coker, and $10,000 in the suit by Lindsey. No writ on inquiry was held, or any proof on the amount of damages prior to entry of the judgments.[1]
While the attorney representing Coker and Lindsey had made no effort to contact Leader National about his claim or about the suit being filed or in progress prior to the entry of the default judgment, he did not lose much time after he secured a final judgment. On July 8 the attorney called Leader National and informed the claims manager that he had obtained a judgment against Yarbrough. Leader National promptly turned the matter over to a Mississippi attorney in Laurel.
Jack Oliver, the manager of the claims department for Leader National, testified his company had received no notice of any kind of suit being filed until the telephone call from the attorney for Lindsey and Coker.

LAW
Two questions this Court needs to ask are:
1. Did Yarbrough breach his contract?
*1331 2. Was Leader National thereby prejudiced?
Clearly both must be answered affirmatively.
Also pertinent is the conduct of plaintiffs' counsel. Could he have avoided this prejudice? Clearly he could have.
The majority puts a premium on artifice.
Let us first note what is customary for attorneys engaged in representing plaintiffs injured in motor vehicle accidents. It is such common and universal practice that I am somewhat embarrassed to relate it.
Mr. Jones employs Attorney Smith to represent him in an auto accident with Mr. Speeder.
Attorney Smith writes Mr. Speeder a letter, apprising him he has been employed by Jones, and requesting that Speeder notify him the name of his insurance company, or have the company get in touch with him if they want to settle the case without suit being filed.
Attorney Smith may already be aware of Speeder's insurance company, and if so he may also write the insurance company along with Speeder.
If no settlement negotiations are forthcoming, or if negotiations prove futile, Smith files suit.
Occasionally, for what are deemed good and sufficient reasons, Attorney Smith will file suit prior to any attempt to negotiate a settlement.
In either event, whenever suit is filed, any prudent attorney knows the importance of seeing to it the insurance company is promptly notified of the suit. Therefore, he also writes the insurance company that he is on that date filing suit (or has just filed suit) against its insured Mr. Speeder in a certain court. He may also enclose a copy of the complaint. He does this for two reasons: first, to be sure the company will not be able to assert in defense that the insured did not notify it of the suit (the very situation we have in this case); and, second, to avoid postponements of the trial because of tardy notification by the insured. It may take several days or even weeks before Speeder receives the summons, and then another time lapse in transmitting notice of suit to the company. This time is saved by Attorney Smith writing the carrier on or about the same date he files suit.
The above illustration with but minor variation is routine in handling accident cases by plaintiffs' attorneys.
Lindsey's and Coker's counsel did none of this. He did not write Yarbrough he represented Lindsey and Coker, and request that he have his insurance company get in touch with him. He did not write the insurance company he was filing suit.
Finally, and most damaging, when Lindsey and Coker brought the April 21 notices to him, this attorney was put on notice that in all likelihood on April 21, 1982, Leader National was not only totally unaware any suit had been filed, but also even that Lindsey and Coker had employed an attorney to represent them. He let this lack of notice or knowledge of the pendency of litigation, which he knew Leader National clearly was entitled to have under the law, inure to his clients' benefit.
Should Lindsey and Coker, and their attorney, now be permitted to reap the reward for this type of conduct?
This attorney had no difficulty notifying Leader National once he had these two final judgments in his pocket.
The majority correctly quote the policy's unequivocal provisions that as a condition precedent to liability the insured must "immediately forward to the company every demand, notice, summons, or other process received by him."
Yarbrough blatantly breached this vital obligation.
In Lyle's office Yarbrough was specifically told if he was being sued, or if he had any papers from anyone, to make Lyle aware of it. Yarbrough promised he would. Then, after giving Mrs. Fairchild only enough information to file a meager report, he made a statement "he thought he was being sued." Obviously Mrs. Fairchild *1332 never understood Yarbrough to mean suit had been filed, or that he had received a summons. Also obvious is the fact Leader National never knew suit had been filed, or that Yarbrough had received a summons. Yarbrough was told in the same office visit to make the insurance agency aware of any suit and bring any papers immediately, and he promised he would do so.
The validity of a contractual requirement that the insured deliver any summons or notice of suit to the insurance company is strikingly obvious in this case. Counsel for Lindsey and Coker argued successfully at trial and to this Court that Yarbrough's general statement he thought he was being sued made a jury issue on whether the company had notice of suit, and this complied with the policy.
It is precisely because there can be argument on whether some local agent has received some oral notification or pendency of suit that insurance policies require the insured to transmit a copy of the notice or summons to it. It is to avoid the very misunderstanding that arose in this case.
To argue that Leader National was under a duty from this general statement, not only to investigate the case and attempt to settle with Lindsey and Coker which it clearly did, but also make a search at the courthouse and see if suit had been filed is asinine. Which courthouse? If Lindsey was the driver, Coker could have sued Lindsey and Yarbrough jointly in any courthouse of any county in which the wandering Lindsey chose to reside. Furthermore, suit might have been brought in a United States District Court. Also, when should the search be made? This needle in the haystack search on one day might be negative in results, but the very next day suit, or suits, could be filed. Search every day? Search every court docket in every state and federal trial court?
There is another good reason to require the insured to forward a copy of the summons or notice of suit to the company. The insurance company may fully expect its insured to be sued on some claim, but it is under no duty to file any court pleadings until the insured has been personally served with summons. It is notice that the insured has received a summons which triggers a responsibility to file something in court. Clearly, in this case the insurance company had no notice whatever Yarbrough had received any summons.
In this case Leader National did everything it should reasonably have been expected to do under the circumstances.
The inaction of Lindsey's and Coker's attorney as to the April 21 notices actually misled Leader National.
That Yarbrough's failure to deliver the summonses to Leader National, or at the very least to promptly notify the insurance agency that he had been summoned in two suits filed against him in the circuit court of Scott County, was prejudicial is beyond dispute. Hardly any worse prejudice can be rendered against a defendant than have a default judgment entered against him.
The majority's sole citation in support of its position of Monarch Ins. Co. of Ohio v. Cook, 336 So.2d 738 (Miss. 1976), will not bear scrutiny. In Monarch the insurance company had been informed of the pendency of the claim, and denied coverage to its own insured. The insurance company ignored repeated letters from the insured and his attorney. There was even a complaint made by the insured to the state insurance commission that he was being sued and his company denied coverage, with copies to the insurance company and its agent.
Monarch was not a case in which the insurance company was not sufficiently notified to protect its interest. It was a case in which the company was notified, but chose to deny coverage under the policy. Moreover, the circuit court in Monarch specifically found the company had received actual notice of the pendency of the suit.
The gist of Monarch was the trial court's and this court's view that it was rather poor grace for a company to first write its insured and deny coverage under the policy, to thereafter repeatedly ignore letters *1333 from the insured requesting help, and then complain that the insured had not transmitted the summons to it.
Turning now to relevant legal principles in this type of case.
The insurance company's defense to a garnishment on a judgment against its insured because of failure to cooperate generally follows one or both of the following scenarios: failure to transmit summons or notice of suit, or failure to cooperate with the insurance company in its defense of the lawsuit against the insured.
We are not concerned with the latter situation. However, in Nationwide Mutual Insurance Co. v. Tillman, 249 Miss. 141, 161 So.2d 604 (1964), in interpreting New York law, we held an insurance company owed a public duty to defend a case as best it could even though its insured gave it no assistance. It could not simply sit idly by when its insured failed to assist in his own defense, do nothing and then assert non-liability for non-cooperation. Later, in State Farm Mutual Auto v. Commercial Union Ins. Co., 394 So.2d 890 (Miss. 1981), we adopted the rule that unless prejudice was shown as a result of the insured's failure to cooperate, the carrier would not be relieved of its obligation under the contract to third party plaintiffs. See also: Martin v. Travelers Indemnity Co., 450 F.2d 542 (C.A. 5th 1971).
This Court has never stated flat out, when an insured has breached his contract by failing to transmit a copy of the summons or notice of suit, whether it is necessary to show prejudice in order to deny coverage. The majority of other jurisdictions presently hold that for such a breach it is not necessary to show prejudice to avoid liability under the contract to third party victims. See: Watts v. Preferred Risk Mutual Ins. Co., 423 So.2d 171 (Ala. 1982); Dairyland Ins. Co. v. Marez, 42 Colo. App. 536, 601 P.2d 353 (1979); State Farm Mutual Automobile Ins. Co. v. Porter, 221 Va. 592, 272 S.E.2d 196 (1980); Hallman v. Marquette Casualty Co., 149 So.2d 131 (La. App. 1963); Trevino v. Allstate Ins. Co., 651 S.W.2d 8 (C.A.Tex. 1983). (After May 1, 1976, Texas State Board of Insurancy by amendatory endorsement to policies required insurance companies be prejudiced in order to deny liability.) See generally, Couch on Insurance, 2nd Ed., § 51:127; 8 Appleman, Insurance Law & Practice (1981), § 4816 at 383, and at 388; 7A Am.Jur. Automobile Insurance, §§ 463, 464 and cases cited thereunder. State Farm Mut. Automobile Ins. Co. v. Cassinelli, 67 Nev. 227, 216 P.2d 606 (1950); Lewis v. Home Ins. Co., 314 A.2d 924 (Del. 1973).
In the case of Nevil v. Wahl (Home Ins. Co. of New York), 228 Mo. App. 49, 65 S.W.2d 123 (1933), the Missouri Court of Appeals held that even though the insurance company had actual notice of the pendency of the suit, failure of insured to forward process served upon him relieved the company of its obligation under the contract to defend or pay the judgment.
A minority of states have held that in order to avoid the policy, the insurer must show that they were prejudiced by the failure of the insured to give notice or to forward suit papers. Lynn v. Village of West City, 36 Ill. App.3d 561, 345 N.E.2d 172 (1976); Barnes v. Lumbermen's Mut. Cas. Co., 308 So.2d 326 (La. App. 1975); Factory Mut. Liability Ins. Co. of America v. Kennedy, 256 S.C. 376, 182 S.E.2d 727 (1971).
In view of compulsory liability insurance, there may be a shift in this rule to require a showing of prejudice.[2]
*1334 We do have two cases involving failure of the insured to transmit the summons to the insurance carrier from which our leaning may be gleaned.
In Aetna Life Ins. Co. v. Walley, 174 Miss. 365, 164 So. 16 (1935), the appellee physician had been sued for malpractice. The insurance company, an indemnity carrier, was not notified of the pending lawsuit until trial was in progress. In denying recovery on the physician's subsequent suit against the company to recover the amount of the judgment rendered against him in the malpractice action we stated:
... The requirements of clauses A, B, and C of the policy conferred a valuable right upon the appellant, the purpose of which was to enable it to investigate a claim against the appellee covered by the policy; to itself decide whether the claim should be settled without litigation, and, if not, to prepare its defense thereto, and should have been complied with, unless compliance therewith was waived or excused under some pertinent rule of law. Downing v. Home Indemnity Co., 169 Miss. 13, 152 So. 841. Delay in complying with such requirements will be excused where the required notice was given in time to enable the insurer to prepare its defense to the asserted claim, and it does not appear that the insurer was prejudiced by such delay, Employers' Liability Corporation v. Jones County Lumber Co. 111 Miss. 759, 72 So. 152, where notice was given to the insurer in Mobile, Ala., ten days before the suit against the insurer was tried.
The notice in the case at bar was not given in the form required by the policy, but that aside, and leaving it out of consideration, the notice was not given in time to enable the appellant to investigate the merits of Mrs. Wren's claim to determine whether or not it should be paid, and, if not, to prepare its defense thereto. Had it participated in the trial of the case, it would have had to accept it as made by the insured, and this was exactly what the requirements of the policy were intended to prevent it from having to do.
* * * * * *
The notice herein required is not of a past event which fixed the insurer's liability (Fidelity & Deposit Co. v. Merchants' & Marine Bank, 169 Miss. 755, 151 So. 373, 154 So. 260), but of something then in progress (Mrs. Wren's attempt to collect damages from the appellee), and of a threat of a future event (the institution of a suit by Mrs. Wren to collect her claimed damages), in both of which matters the appellant was vitally interested.
In Courtney v. Stapp, 232 Miss. 752, 100 So.2d 606 (1958), appellant Courtney's attorney had written Mrs. Stapp's insurance carrier of Courtney's claim. Thereafter, suit was filed, and the attorney a few days later wrote the carrier requesting the return of a previously executed release, but said nothing about any suit his client had against Mrs. Stapp. Likewise, Mrs. Stapp, although she had occasion to talk with the adjuster several times thereafter, never forwarded the summons or told him "that she had actually been sued and that summons had been served on her." [P. 757 Miss. Report, 100 So.2d 606]
Mrs. Stapp told the adjuster "that she had heard through family sources that the suit might be called up without her knowledge," and he advised her that she would have to be notified by summons, and when she received it to let him know, and the company would furnish a lawyer to defend her. Courtney and Stapp were sisters-in-law. The insurance company received no notice until final judgment was entered.
In holding the insurance carrier was not liable, we stated:
The failure of the insured to comply with the provisions of the policy with reference to forwarding to appellee the summons served on her in the suit filed *1335 by appellant relieved the insurer of liability to pay the judgment rendered by default and without the knowledge of the insurer. The policy imposed liability on appellant to defend all suits against Mrs. Stapp, and, within the limitations of the policy, to pay any judgment rendered against her. The policy provided that Mrs. Stapp forward to appellee any summons received by her. This latter provision was a valid, reasonable and binding requirement, and was necessary to provide appellee with notice of the suit so as to enable it to protect Mrs. Stapp and itself. State Mutual, etc., Insurance Co. v. Watkins, 181 Miss. 859, 180 So. 78; 8 Appeleman, Insurance Law and Practice, 126; Donlon v. American Motorists Insurance Co., 147 S.W.2d 176 (Mo. [App.]). There was neither strict compliance, substantial compliance, nor attempt to comply, with the provisions of the policy; and appellee knew nothing of the pendency of the suit until it was too late to defend it.
In both Walley and Courtney the insurance carrier had clearly been prejudiced by the insured's failure to transmit the summons or notice of suit. Even if it were conceded that this Court would require a showing of actual prejudice before an insurance carrier would be permitted to deny liability under its policy on a post-judgment garnishment, which we are not called upon to address in this case, that Leader National was actually prejudiced in this case is quite clear to me. When it was notified of the claim it promptly employed an adjusting firm to investigate on behalf of its insured, and made every reasonable effort to handle the claim with reasonable promptness. When it was informed a judgment had been rendered against it by telephone, it promptly employed an attorney. There is nothing in this record to indicate the company would have hesitated to employ counsel and defend the suits against Yarbrough if it had actually known of them. The ambiguous notice Yarbrough gave simply was insufficient.
Add to this the conduct of plaintiff's counsel, I can see no basis whatever for recovery under the policy.
WALKER and ROY NOBLE LEE, P.JJ., join this opinion.
NOTES
[1] The record is a total blank as to the injuries of either, except the handwritten memo from Ramsey stated he was informed by the USF & G office that Lindsey had been seen in the emergency room of a Laurel hospital, and Coker complained of pains in his neck and head.
[2] Indeed, there are a number of jurisdictions that hold that failure of the insured to give its insurer notice will not defeat the injured plaintiff's right to recover up to the statutory amount which the State requires the insured to carry under its compulsory liability insurance law. Sanders v. Travelers Indemnity Co., 144 F. Supp. 742 (M.D.N.C. 1956); American Emp. Ins. Co. v. Sterling, 101 N.H. 434, 146 A.2d 265 (1958); Swain v. Nationwide Mut. Ins. Co., 253 N.C. 120, 116 S.E.2d 482 (1960); Arceneaux v. State Farm Mutual Automobile Insurance Co., 113 Ariz. 216, 550 P.2d 87 (1976).

This issue is not, however, before this Court today as it was neither assigned as error nor argued. This line of cases to me represent rather curious reasoning. It seems much more logical that if an insurance company is to be held liable regardless of what its insured does, that is all the more reason to require that they be actually summoned or receive actual notice in writing.